### In the Interest of M.P.M., S.N.M., and J.D.M., Minor Children.

No. 04-04-00264-CV.

Court of Appeals of Texas, San Antonio.

Feb. 23, 2005.

Mark L. Medley, Law Office of Mark L. Medley, P.C., San Antonio, for appellant.

Christine Tharp, Robinson C. Ramsey, Langley & Banack, Inc., San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

Delia Monica Maher appeals the trial court's order denying her motion for judgment of child support arrearage and refusing to find Stephen Maher, the appellee, in contempt.[1] Delia raises three issues on appeal. She contends the evidence presented at trial was legally and factually insufficient to support the court's finding that she voluntarily relinquished possession and control of her two oldest children, M.P.M. and S.N.M., to Stephen. Delia also contests the legal and factual sufficiency of the evidence supporting the trial court's finding that Stephen was entitled to a child support offset. Lastly, Delia argues the trial court erred by improperly calculating the offset. In a cross-issue, Stephen requests a judgment against Delia for reimbursement of child support.

### Factual and Procedural Background

Delia and Stephen Maher were divorced in 2001. Pursuant to the divorce decree, Stephen was ordered to pay $1200 a month in child support and provide health insurance for the couple's three children, M.P.M., S.N.M., and J.D.M. Delia and Stephen were appointed joint managing conservators of their children, with Delia retaining primary custody and Stephen entitled to possession during specified periods of time. In July 2002, M.P.M. went to stay with Stephen and continued to reside in his home until the court awarded Stephen primary custody in December 2003.[2] The couple's second oldest child, S.N.M., also resided with Stephen from March 2, 2003 until August 2003. Delia testified at trial that Stephen provided financial support for M.P.M. and S.N.M. while they were residing with him, and that she did not pay Stephen any child support for M.P.M. and S.N.M. Stephen continued to make $1200 child support payments to Delia until April 2003, one month after S.N.M. began living at his residence. Stephen ultimately reduced the amount of child support he was paying, and Delia filed pleadings, requesting the court to grant her a judgment in child support arrears and to hold Stephen in contempt.

As an affirmative defense, Stephen invoked section 157.008 of the Texas Family Code. Tex. Fam.Code Ann. § 157.008 (Ver-

1. Because an order refusing to find a party in contempt is not a final, appealable judgment, this court lacks jurisdiction to rule upon Delia's request for a reversal of the trial court's decision to deny Delia's motion for contempt. *See Norman v. Norman,* 692 S.W.2d 655 (Tex. 1985) (holding that the court of appeals did not have jurisdiction over an order refusing to find an obligor in contempt for child support arrearage).

2. In October 2003, the court revised Stephen's child support payment. Effective October 1, 2003, Stephen is required to pay Delia $275 per month in child support for S.N.M. and J.D.M., who reside with their mother.

non 2002) (providing that an obligor may plead as an affirmative defense to a motion for enforcement of child support that the obligee voluntarily relinquished to the obligor actual possession and control of a child). He testified that Delia voluntarily relinquished possession and control of M.P.M. by closing the door in her face, telling M.P.M. she did not live with her anymore, and informing Stephen she did not want M.P.M. to live with her. Delia denied she said these things, and testified she wanted M.P.M. to return. Stephen also testified that Delia voluntarily relinquished possession and control of S.N.M. by asking Stephen to pick up S.N.M. after telling S.N.M. to go live with her father. Delia testified that she wanted the children back, that Stephen kept them from her, and would not let them speak with her on the telephone. Stephen denied that Delia asked for return of the children. Both testified that during the periods of time M.P.M. and S.N.M. resided with Stephen, the children visited and stayed overnight at Delia's home on sporadic occasions. Both children were returned to Stephen's residence after such visits.

To support his affirmative defense, Stephen testified about the time periods each child resided with him, and provided exhibits summarizing his testimony regarding expenses he incurred to support M.P.M. and S.N.M. The trial court determined that Stephen owed $6,443 in child support arrears, and that Delia had voluntarily relinquished possession and control of her two oldest children. The court determined that Stephen retained possession of M.P.M. and S.N.M. for a time period in excess of court-ordered possession and had provided actual support to the children during that time period. *See id.* § 157.008(a), (b). Stephen testified that he provided $9,898.41 in actual support of M.P.M. and S.N.M., and spent $2,433.17 on medical care during the period of voluntary relinquishment. Because Stephen provided actual support in excess of the arrears, the court offset Delia's claim by $6,443, thus finding Stephen to be current in his support payments. Accordingly, the trial court denied Delia's request for a judgment awarding a child support arrearage and refused to hold Stephen in contempt.

## Standard of Review

We review the trial court's child support ruling under an abuse of discretion standard. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990); *In Re C.Z.B.,* 151 S.W.3d 627, 630 (Tex.App.-San Antonio 2004, no pet.). A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner, without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Id.* at 242. Under the abuse of discretion standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error. *In re Gonzalez,* 993 S.W.2d 147, 155 (Tex.App.-San Antonio 1999, no pet.). However, legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion. *Id.*

When reviewing the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the finding, disregarding all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex. 1988). Anything more than a scintilla of

evidence is legally sufficient to uphold the finding. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex.1998).

In conducting a factual sufficiency review, we consider and weigh all the evidence in a neutral light, and will sustain a factual sufficiency challenge only if we conclude that the evidence supporting the finding is so weak that the finding is clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). As the trier of fact, the court determines the credibility of witnesses and the weight to be given their testimony, whether to believe or disbelieve all or any part of the testimony, and how to resolve any inconsistencies in the testimony. *Lifshutz v. Lifshutz,* 61 S.W.3d 511, 515 (Tex.App.-San Antonio 2001, pet. denied).

### Sufficiency of the Evidence

In two issues on appeal, Delia argues there was insufficient evidence to support the trial court's finding that she voluntarily relinquished possession and control of M.P.M. and S.N.M., and insufficient evidence to support a finding that Stephen was entitled to an offset against her claim for child support arrears.

#### A. Voluntary Relinquishment

Delia argues that the evidence does not support a finding that there was an affirmative agreement to relinquish possession and control of M.P.M. and S.N.M. under section 157.008(a) of the Texas Family Code, which provides:

> An obligor may plead as an affirmative defense in whole or in part to a motion for enforcement that the obligee voluntarily relinquished to the obligor actual possession and control of a child.

Tex. Fam.Code Ann. § 157.008(a). Delia relies on the *Norman* case, in which a three-judge plurality stated that the term "voluntary relinquishment" requires an affirmative agreement to give up the child; the statute requires more than evidence of a de facto change in residence to support a voluntary relinquishment finding. *Norman,* 683 S.W.2d at 550–51. Even if we assume, without deciding, that there must be an affirmative agreement to relinquish custody, the evidence in this case supports a finding that Delia affirmatively agreed to relinquish possession and control of M.P.M. and S.N.M.

There was testimony that Delia shut the door in M.P.M.'s face and informed the child she did not live with her anymore. There was also testimony that Delia asked Stephen to pick up S.N.M., told the child to go live with him, and did not request return of either child. Although Delia testified that she never agreed M.P.M. and S.N.M. could reside with their father and wanted the children to return, she did testify that the children came to visit her and spend the night on sporadic occasions, after which she would return them to Stephen's residence. Viewing the evidence in a light most favorable to the finding, we cannot say the trial court erred in finding Delia voluntarily relinquished possession and control of M.P.M. and S.N.M. *Davis,* 752 S.W.2d at 522. Because we find there is more than a scintilla of evidence to support the trial court's determination, we must uphold it. *Formosa,* 960 S.W.2d at 48.

In the alternative, Delia asserts that the evidence was factually insufficient to support the trial court's voluntary relinquishment finding. Considering and weighing the evidence in a neutral light, we cannot say the evidence supporting the voluntary relinquishment finding was so weak as to be clearly wrong and manifestly unjust. *Cain,* 709 S.W.2d at 176. Each side had testimony to support its position. The trial court, as the trier of fact, was authorized

to resolve conflicts in the testimony and determine the credibility of the witnesses. *Lifshutz,* 61 S.W.3d at 515. We hold there was sufficient evidence for the trial court to make a finding that Delia relinquished possession and control of M.P.M. and S.N.M. during the months they resided with Stephen. Delia's first issue is overruled.

### B. Entitlement to Offset

In her second issue, Delia contends the evidence was insufficient to support the trial court's finding of Stephen's entitlement to an offset. The Family Code provides for an offset against the child support arrearage for actual support provided by the obligor during the period of excess possession. Tex. Fam.Code Ann. § 157.008(b), (d). The party claiming benefit under the statute bears the burden of proving that he had possession of the children for a time period in excess of the court-ordered periods of possession, and must provide the court with some evidence of his expenditures on the children. *Id.* § 157.008(b); *Curtis v. Curtis,* 11 S.W.3d 466, 472 (Tex.App.-Tyler 2000, no writ). Delia argues that Stephen did not meet his burden because the summaries he provided to accompany his testimony regarding expenses were inadmissible under Tex.R. Evid. 1006 (allowing the contents of otherwise admissible voluminous writings to be presented in the form of a chart summary). Although Delia contends Stephen failed to meet his burden of proving the admissibility of the summaries under Rule 1006, she failed to object to the admissibility of the summaries at the trial on that basis. Tex.R.App. P. 33.1 (requiring a specific objection to preserve a complaint for appellate review). In fact, Delia's counsel stated there was no objection to the exhibits as a short-hand rendition of Stephen's testimony. Accordingly, we hold that Delia has waived this argument on appeal.

Stephen testified that he provided $9,898.41 in actual support of M.P.M. and S.N.M. while they resided with him and provided exhibits listing the expenditures made on behalf of M.P.M. and S.N.M. during the months they resided with him.[3] Further, Delia conceded that Stephen provided full financial support to M.P.M. and S.N.M. during the months they resided with him. We conclude the evidence was sufficient to support a finding that Stephen provided actual support for M.P.M. and S.N.M. during the voluntary relinquishment, satisfying his burden under the Family Code. *See In re S.L.M. and J.A.M.,* 97 S.W.3d 224, 235 (Tex.App.-Amarillo 2002, no pet.) (holding that the obligor's testimony regarding expenses, accompanied by a document setting out amounts expended for the child's support, was sufficient evidence to support the trial court's finding that the obligor provided actual support during the period of voluntary relinquishment). Delia's second issue is overruled.

### Calculation of the Offset

In her third issue, Delia argues that the trial court erred in applying the evidence and the law in calculating the offset. We must determine whether the trial court erred by improperly calculating Stephen's offset, examining: a) whether Stephen was

3. Delia complains that finding of fact number 18 awards Stephen an "approximate" credit of $9.898.41 in actual support of M.P.M. and S.N.M. during the period of voluntary relinquishment. Assuming the trial court erred in awarding an "approximate" credit, this is not harmful error. Tex.R.App. P. 44.1(a)(1), (2) (a judgment shall not be reversed on appeal unless the error "probably resulted in the rendition of an improper judgment," or "probably prevented the appellant from properly presenting the case to the court of appeals"). Therefore, we overrule this argument.

required to itemize his expenses to account for his expenditures on the children, rather than allocating percentages of household expenses to each child; b) whether Stephen was improperly granted credit for support he provided on days within the period of voluntary relinquishment on which he otherwise had court-ordered possession of the children; c) whether the arrearage and actual support must be reconciled on a calendar year basis; d) whether actual support provided to two children can be used to offset the entire amount of child support owed in support of three children; and e) whether Stephen presented sufficient evidence that he provided medical insurance during the voluntary relinquishment, thus establishing his right to an offset for medical expenses.

### A. Itemized Listing of Expenses Incurred in Support of the Children

Delia argues that it was improper for Stephen to present to the court percentages of household expenditures rather than an itemized listing of expenditures made on behalf of the children to support his affirmative defense that he was entitled to an offset for the full $6,443 arrearage. Under Delia's theory, the obligor would be unable to allocate percentages of household expenditures to prove his actual, direct support to the children residing with him. For instance, if one child was residing with the obligor, it would be impermissible for the obligor to allocate 50% of the grocery bill for support of that child; the obligor would be required to examine the grocery list and itemize every specific item purchased for the child. Delia does not cite any case law to support her argument and our research did not reveal any case law that requires an obligor to provide an itemized listing of expenses to prove his actual support of the children under section 157.008(b) of the Family Code. Indeed, Delia's argument has already been examined and rejected. *See Rinehold v. Rinehold,* 790 S.W.2d 404, 406 (Tex.App.-Houston [14th Dist.] 1990), *rev'd on other grounds* 924 S.W.2d 366 (Tex.1996). In *Rinehold,* the court of appeals held that the obligor's evidence of household expenses for the period in which his child resided with him, divided by the number of persons in the household, provided evidence of actual expenditures for the child sufficient to sustain the trial court's offset against the obligee's claimed arrearage.

Finally, we note that Stephen sought offset for actual expenses he incurred such as increased groceries, increased utilities, medical expenses, and clothing. He did not seek any offset for expenses he would have incurred regardless of whether his daughters were living with him, *e.g.,* rent or mortgage payments. In light of Stephen's limited request, we cannot say the trial court abused its discretion. Delia's argument that Stephen was required to give an itemized accounting of expenditures rather than allocating percentages of household expenses in support of the children is therefore overruled.

### B. Segregation of Expenses According to Periods of Possession

Delia contends that the trial court erred by crediting Stephen for actual support he provided M.P.M. and S.N.M. during the period of voluntary relinquishment on days which he ordinarily would be entitled to possession of the children pursuant to the divorce decree. In order to prevail on an affirmative defense under section 157.008 of the Family Code, an obligor must show that the obligee voluntarily relinquished possession and control of the children, and "the voluntary relinquishment must have been for a time period in excess of any court-ordered periods of possession of and access to the child and actual support must have been supplied by

the obligor." TEX. FAM.CODE. ANN. § 157.008(a), (b). Under subsection (d), "[a]n obligor who has provided actual support to the child *during a time subject to an affirmative defense* under this section may request reimbursement for that support as a counterclaim or offset against the claim of the obligee." *Id.* § 157.008(d) (emphasis added). Delia argues that subsection (d) requires the obligor to construct a daily segregation of the amounts of actual support he provided the children, segregating the support provided on days during the period of voluntary relinquishment in which he would ordinarily be entitled to access and possession of the children.

In construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent. *See McIntyre v. Ramirez,* 109 S.W.3d 741, 745 (Tex.2003) (citing *Tex. Dep't of Transp. v. Needham,* 82 S.W.3d 314, 318 (Tex.2002)). We begin with the plain and common meaning of the statute's words, and if the language is unambiguous, we interpret the statute according to its plain meaning. *Id.* (quotations omitted); *RepublicBank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985) ("Unless a statute is ambiguous, we must follow the clear language of the statute" and take statutes as we find them). We should also consider the consequences that would follow from a particular construction of a statute. TEX. GOV'T CODE ANN. § 311.023(5) (Vernon 1998). Furthermore, interpretations of statutes which would produce "absurd" results are to be avoided. *Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 249 (Tex.1991).

By the plain language of the statute, the time subject to the affirmative defense is the period of voluntary relinquishment. The voluntary relinquishment itself must be for a time period in excess of any court-ordered periods of possession, but we do not read the statute to impose a segregation of actual costs incurred during the voluntary relinquishment period under subsection (d). Under Delia's construction of the statute, obligors would be required to segregate receipts and any other evidence of actual support day by day, hour by hour, in order to account for times the obligor, in the absence of the voluntary relinquishment, would normally have been entitled to access and possession of the child.[4] We believe such a construction would lead to absurd results and be contrary to the statute's intent, *i.e.,* to allow reimbursement or offset for actual support provided by the obligor, who has acquired

4. The divorce decree provides for specific time periods and occasions on which Stephen is entitled to possession of the children. In summary, the decree provides that Stephen is entitled to possession of the children during the school year on the first and third Wednesdays of each month, through the following Monday; on the second and fourth Wednesdays of each month, ending at the time the children's school or daycare resumes on the following Friday; and on the fifth Wednesdays of each month, through the following Monday. During the summer, Stephen is entitled to possession of the children for 30 days, provided he furnishes Delia with a written request by April 1st of that year (without written request, he is entitled to summer possession for 30 days during the month of July). Regarding holidays, Stephen is entitled to possession of the children, in even-numbered years, from the first day of the children's Christmas vacation until December 26th; in odd-numbered years, Stephen is entitled to possession from December 26th until the day before the children's school resumes from Christmas vacation. Stephen is also entitled to possession of the children on Thanksgiving Day in odd-numbered years; Spring Break in even-numbered years; and Father's Day weekend on an annual basis. The decree further breaks down Stephen's court-ordered possession to times of the day: he is only entitled to possession on the specified days by a certain time, and must return the children to Delia by a specified time (e.g. 6:00 p.m.).

primary custody of the child through the obligee's voluntary relinquishment.[5] *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex.1996) (interpretations of a statute that would defeat its purpose must be rejected so long as another reasonable interpretation exists). We overrule this portion of Delia's argument and conclude the trial court did not err in allowing reimbursement by way of offset for support actually provided by Stephen during the periods he had possession of M.P.M. and S.N.M. due to Delia's voluntary relinquishment.

### C. Calculation of the Arrearage on an Annual Basis

Delia asserts that the trial court erred by allowing actual support provided by Stephen in 2002 to offset his 2003 child support arrearage. Delia contends the trial court was required to reconcile the arrearage and actual support on a calendar year basis alone. Delia argues that if arrearage is not calculated to be offset on an annual basis, previous monies paid by an obligor years after a child comes to live with the obligor could be used to offset prior years' court ordered obligation. However, Delia has not produced any authority for this interpretation of section 157.008(d) of the Family Code, and our research fails to yield any support for the argument that the Code requires offset to be calculated on an annual basis alone. Therefore, we conclude the trial court did not act arbitrarily or unreasonably, or without reference to guiding principles of the Family Code. *Downer,* 701 S.W.2d at 241 (a trial court abuses its discretion when it acts without regard to any guiding rules or principles). We overrule this argument and conclude the trial court did not abuse its discretion by not calculating the offset on an annual basis.

### D. Calculation of Offset for Support Obligation of Multiple Children

Delia contends the trial court erred by calculating the offset so as to eliminate Stephen's court-ordered child support for J.D.M., the parties' youngest child who continued to reside with Delia. Delia argues that when multiple children are the subject of a child support order, the expenses for some cannot offset the duty of support for the entire group of children. Delia does not cite any authority for this argument, which has already been heard and rejected by one of our sister courts. *See In re S.L.M.*, 97 S.W.3d at 236 (finding that the amount of the obligor's offset was not limited to support for one child who resided with him when the court's order had not apportioned the obligor's child support order between the two children). While Delia's argument may be applicable to cases in which the child support is ordered as an amount per child, *see Lewis v. Lewis,* 853 S.W.2d 850 (Tex.App.-Houston [14th Dist.] 1993, no writ) (obligor was ordered to pay $600 child support for each child, and was thus limited to $600 per month offset for the one child that was relinquished to his care and possession), that is not the type of order found in this case. Therefore, we overrule this argument.

5. We respectfully disagree with the Corpus Christi Court of Appeals' recent decision, *In the Interest of G.V., III, R.N.V., and S.A.V.*, No. 13–03–026–CV, 2004 WL 1909417, at *4 (Tex. App.-Corpus Christi 2004, no pet.) (not designated for publication) (holding that the obligor improperly received credit for actual support provided during the summer month he ordinarily has court-ordered possession of the child). As stated previously, we do not read the statute to impose a requirement that the obligor segregate his proof of actual support to take into account days which he ordinarily is entitled to possession of the child once the obligee has voluntarily relinquished possession and control of the child to the obligor.

E. Medical Expenses

With regard to medical expenses, Delia contends Stephen presented insufficient evidence that he provided medical insurance for the children during the period of voluntary relinquishment and thus was not entitled to offset the children's medical bills. The trial court found that Delia owed Stephen for half of the medical expenses ($1,216.58) and offset the arrearage. Delia argues this was error because the divorce decree orders Stephen to maintain health insurance on all three children, and also provides:

> A PARENT ORDERED TO PROVIDE HEALTH INSURANCE WHO FAILS TO DO SO IS LIABLE FOR NECESSARY MEDICAL EXPENSES OF THE CHILDREN, WITHOUT REGARD TO WHETHER THE EXPENSES WOULD HAVE BEEN PAID IF HEALTH INSURANCE HAD BEEN PROVIDED.

The divorce decree further provides that the party providing health insurance is entitled to reimbursement from the other party for any uninsured medical expenses. Stephen conceded that the children were not covered by health insurance at the time of the hearing, but testified they had last been covered by his health insurance in November 2003. Exhibit five reflects that Stephen was paying $158 monthly to maintain health insurance on the children during 2003. There is more than a scintilla of evidence to support the finding that Stephen provided health insurance in 2003. *See Formosa,* 960 S.W.2d at 48. However, Stephen did not testify that he provided health insurance for the children in 2002, and he offered no documentary evidence to support the conclusion that the children were covered by medical insurance in 2002. Thus, we conclude the evidence was insufficient to establish that the children were covered by medical insurance in 2002. Further, we conclude it was error for the court to grant Stephen credit for one-half of the medical expenses incurred in 2003 because he did not provide any testimony or evidence as to which medical expenses were not covered by the health insurance plan, which would have triggered Delia's obligation to reimburse. Thus, the trial court's finding that Stephen is entitled to a $1,216.58 credit against the arrearage is not supported by the evidence, and Stephen is not entitled to the $1,216.58 credit. We sustain Delia's sufficiency challenge regarding the medical expenses. Because we sustain this issue, we modify the trial court's judgment under Tex.R.App. P. 43.2(b) to delete the following portion of the trial court's judgment:

> All medical expenses set out in Exhibit "A" and those medical expenses for which no receipts were available and incurred during STEVE MAHER'S actual possession of the children which were paid by STEVE MAHER are considered as part of the offset. Therefore the one-half owed by DELIA MAHER to STEVE MAHER is considered paid.

However, because Stephen provided sufficient evidence that he provided $9,898.41 in direct, actual support of M.P.M. and S.N.M., and this amount exceeds the child support arrearage of $6,443, sustaining this issue does not require reversal of the judgment. *See* Tex.R.App. P. 44.1(a)(1) (providing that no judgment shall be reversed on appeal unless the trial court's error "probably resulted in the rendition of an improper judgment").

Cross-Issue

Stephen raises one cross-issue in his reply brief, contending the trial court erred by not granting him a judgment for reimbursement against Delia in the amount of $2,899.32, the amount of support the trial court found was provided in ex-

cess of Stephen's child support obligation. Because Stephen did not file a separate notice of appeal, he has waived appellate review of his cross-issue. TEX.R.APP. P. 25.1(c) (requiring a party who seeks to alter the trial court's judgment to file a notice of appeal). Stephen's cross-issue is overruled.

### CONCLUSION

After reviewing the record, we conclude the evidence was legally and factually sufficient to support the trial court's conclusion that Delia voluntarily relinquished possession and control of M.P.M. and S.N.M. to Stephen for a period in excess of his court-ordered periods of possession of the children. Further, the evidence presented at trial was sufficient to support the trial court's conclusion that Stephen provided actual support to M.P.M. and S.N.M. during the period of voluntary relinquishment and thus was entitled to an offset against the arrearage. We sustain Delia's sufficiency challenge to the court's finding that Stephen was entitled to a credit for medical expenses he incurred for M.P.M. and S.N.M. while they resided with him, modify the judgment to delete that finding, and as modified, we affirm. TEX.R.APP. P. 43.2(b).